Moncure, P.
This is a writ of error to a judgment of the hustings court for the city of Eichmond, rendered on the 13th day of May, 1878, convicting the *888 plaintiff in error, C. Tlion, of a misdemeanor, on an indictment which had been found against him and endorsed “ a true bill ” by a grand jury of the said city.
It was charged in the indictment that “ C. Thon, within twelve months last past, in the year one thousand eight hundred and seventy-eight, at the said city and within the jurisdiction of the said hustings court of the city of Richmond, in the bar-room of him, the said C. Thon, there situate, between twelve o’clock on Saturday night of the week and sunrise of the succeeding Monday morning, unlawfully did sell intoxicating drinks, against the peace and dignity of the Commonwealth of Virginia.”
A summons to appear and answer the said indictment on the 23d day of April, 1878, having been duly issued and returned “executed” on the defendant, he accordingly appeared and moved the court to quash the indictment for errors apparent on its face. And the court, after taking time to consider the said motion, and considering it accordingly, on the 27th day of April, 1878, overruled the same, to which action of the court the defendant excepted, and the case was continued till the next term of the court.
At which time, to-wit: the 13th day of May, 1878 (being the same day and year first hereinbefore written), the said defendant again appeared, and being arraigned of the said offence, tendered to the court a special plea in abatement, in writing, verified by his affidavit, and the said plea being seen and inspected, the attorney for the Commonwealth moved th.e court to reject the said plea, and the court sustained the said motion and rejected the said plea. '
The defendant being then required to plead to the said indictment, pleaded not guilty to the same; and thereupon a jury being sworn to try the issue joined on said plea, and having heard the evidence and argu *889 merits of counsel, returned a verdict in these woi'ds: «Ve the jury find the prisoner guilty, and assess his fine at ten dollars.”
The defendant thereupon moved the court to set aside the said verdict, on the ground that the same was contrary to the law and the evidence, and upon the ground that the court had no jurisdiction to hear and determine the cause, and also for errors apparent upon the record, and grant him a new trial; which several motions the court overruled.
The defendant then moved the court in arrest of judgment upon the said verdict; which motion the court also overruled.
Whereupon it was considered by the court that the said O. Thon pay and satisfy the said fine of ten dollars, the sum assessed by the jury in their verdict aforesaid, together with the costs of the prosecution. And it was ordered that he be committed to the jail of said city until said fine and costs be paid or he be otherwise discharged by due course of law, such confinement not to exceed six months.
Five hills of exceptions were taken by the defendant to opinions given by the court against him in the progress of the trial, which will be noticed in this opinion as far as necessary.
The defendant applied to a judge of this court for a writ of error to the said judgment; which was accordingly awarded.
The act of assembly on which the conviction in this -case was had is the act approved March 6, 1874, entitled “ an act prohibiting the sale of intoxicating liquors on the Sabbath day.” Acts of Assembly, 1874, p. 76, ch. 83. It enacts “that no intoxicating drink shall be sold in any hai’-room, restaurant, saloon, store, or other place within the limits of this commonwealth from 12 *890 o’clock on each and every Saturday night of the week until sunrise of the succeeding Monday morniug; and any person violating this act shall be deemed guilty of a misdemeanor, and, if convicted, shall be punished by fine not less than ten nor more than five hundred dollars; and shall moreover, at the discretion of the court, forfeit his license: provided that this law shall not apply to any city having police regulations on this subject' and an ordinance inflicting a penalty equal to the penalty inflicted by this statute.”
The only defence relied on by the defendant in the prosecution was that the said law does not apply to the city of Richmond, because it has, within the true intent and meaning of the said proviso, police regulations on the subject and an ordinance inflicting a penalty equal to the penalty inflicted by the said statute.
■ All the bills of exception taken and made a part of the recoi’d in the case were intended to present the said defence, and they need not therefore be set out in detail. The defence was certainly presented properly, in some if not all of them.
The police regulations and ordinance relied on in the ■said defence as preventing the application of the said law to the city of Richmond is the 13th section of chapter 44 of City Ordinances 1875, p. 245, the title of which said chapter is “Concerning Various Ruisances,” and which said section is in the words following, to-wit:
“13. Every hotel-keeper and keeper of a restaurant, • lager beer saloon, or other place where ardent spirits, beer, cider, or other drinks are sold or given away, shall close the bar where such drinks are sold or given away every Sunday during the whole day. At all times when such bar shall be open, the license under which the business is conducted shall remain posted in some conspicuous place in the bar-room. And any person violating any *891 provision of this section shall be fined not less than ten nor more than five hundred dollars.”
An ordinance in the same words, except as to the amount of the fine, had long been in force in the said city at the time of the passage of the said act of assembly. It is contained in the 13th section of chapter 46 of City Ordinances 1869, p. 239, the title of which chapter is: “ Concerning Nuisances not in Streets.” The fine prescribed by that ordinance was “ not less than twenty nor more than fifty dollars.” On the 23d day of March, 1874, the said ordinance was amended as to the amount of the fine, so as to make it “not less than ten nor more than five hundred dollars;” being the same amount prescribed by the said act of assembly. It seems that the said ordinance, as so amended, has since continued to be and is still in force, and that, except as to such amendment, it continued in force from the time of its first adoption—certainly from the time of the publication of the City Ordinances in 1869. It was argued that the object of the said amendment was to bring the said ordinance within the meaning of the said proviso, which is not at all unlikely.
Now, does the ordinance, as it now stands, come within the meaning of the proviso contained in the act of assembly ? That is the question, and the only question, we we have now to consider.
Certainly it ought plainly to come within the meaning of the said proviso to have that effect. The body of the act is plain in its terms, and embraces in its operation the whole “ limits of this commonwealth.” It is not pretended that the accused did not commit the act described in the body of the law, and did not incur the penalty therein prescribed, unless he can be saved from the operation of the said law by means of the said proviso.
If the proviso had plainly declared that the law should not apply to any city having police regulations and an *892 ordinance to the same effect with the body of the law, both as to the definition of the crime and the nature and measure of the penalty, there would perhaps have been nothing unreasonable in the law, and certainly-no room for doubt as to the meaning of the legislature. The plain intention in that case would have been that the same penalty should be inflicted on the commission of a like offence, whether committed in a city or in the country; but if committed in a city with such police regulations and such an ordinance, they and not the body of the act of assembly should apply to the case. There would be nothing unequal nor unreasonable in such an effect.
But if the proviso had plainly declared that the law should not apply to any city having police regulations and an ordinance not to the same effect with the body of the law, either as to the definition of the offence, or as to the nature and measure of the penalty, such an effect would have been very unequal and unreasonable, even if such a law would have been valid; a question which need not be here decided.
Certainly, however, it may be here laid down that police regulations and an ordinance ought plainly to come within the meaning of the proviso when the effect would be so unequal and unreasonable.
The ordinance was ordained many years before the enactment of the law, and of course without reference to the terms of the law, which was not then in existence. The law was framed without reference to the ordinance, and probably without any knowledge on the part of its framers of the terms, if not of the very existence, of the ordinance. The expressions in each are very different, both in form and substance, though both related to the violation of the Sabbath, and the prevention of intemperance and disorder on that day. The person contemplated by the ordinance as the person on whom it was in *893 tended to operate is “ every hotel-keeper and keeper of a restaurant, lager beer saloon, or other place where ardent spirits, beer, cider or other drinks are sold or given away,” who is required by the ordinance to “ close the bar where such drinks are sold or given away, every Sunday during the whole day. And it directs that at all times when such bar shall be open the license under which the business is conducted shall remain posted in some conspicuous place in the bar-room. On the other hand, the act declares that no intoxicating drink shall be sold in any bar-room, restaurant, saloon, store or other place loithin the limits of this commonwealth from 12 o’clock on each and every Saturday night of the week until sunrise of the succeeding Monday morning.
Now, here are sevei’al material differences between the offence prohibited by the ordinance and the offence prohibited by the act. The former offence is that of keeping open on Sunday the bar where such drinks as are enumerated in the ordinance are sold or given away; and also that of not keeping posted in some conspicuous place in the bar-room, at all times when such bar shall be open, the license under which the business is conducted. The' latter offence is that of selling any intoxicating drink in any bar-room, restaurant, saloon, store or other place xoiihin the limits of this commonwealth from 12 o’clock on each and every Saturday night of the week until sunrise of the succeeding Monday morning. A person may violate the ordinance by keeping open on Sunday the bar where such drinks are sold, though he does not sell a single drink. The selling of a drink is not a necessary ingredient of the offence. But a person cannot violate the statute without selling an intoxicating drink, even though he should keep open “ the bar where such drinks are sold or given away, every Sunday during the whole day.” The keeping open the bar, even for a single instant, is *894 not a necessary ingredient of the offence under the statute.
The fact obviously is that the two laws, city and state, were enacted diverso intuitu. The former was aimed at the offence of keeping open a bar-room on Sunday, while the latter was aimed at the offence of selling an intoxicating drink anywhere “within the limits of this commonwealth from 12 o’clock on each and every Saturday night of the week until sunrise of the succeeding Monday morning.” They were obviously enacted without any reference to each other. Of course the ordinance was enacted without reference to the statute, •which was not then in existence; and the statute defines a very different offence from that Avhich was defined by the ordinance. The attempt now made to make the two offences substantially the same must therefore fail. It is said that the city council, by their amendment of the odinance, made seventeen days after the enactment of the statute, intended thereby to supersede the statute. But whatever their intention may have been, they certainly had no power to supersede the statute as $o the city, at least except in the very mode prescribed by the statute. That mode, evidently, was to define the same offence and prescribe the same punishment substantially iir the ordinance as had been done in the statute. The council may have supposed that it was only necessary to make the penalty the same under each, and that they did so by prescribing the same amount of fine for the offence of violating the ordinance which had been prescribed for violating the statute. But did that make even the penalty the same ? The statute not only prescribes a fine for the offence^ but declares that the offender shall, moreover, at the discretion of the court, forfeit his license. If this forfeiture, at the discretion of the court, be considered *895 as a part of the penalty inflicted by the statute, then, •clearly, the penalty inflicted by the ordinance, even as amended, is not equal to the penalty inflicted by statute. But it is not intended, because not deemed necessary, to decide that question in this case.
Without deciding whether or not the penalties for violating the ordinance and the statute are the same, it is enough to say that the offences under each are not substantially the same; and this we think we have already shown.
But in addition to what we have said on that subject, we have further to say, that the statute embraces a period 'which is not embraced in the ordinance—that is, from-twelve o’clock every Sunday night until sunrise of the succeeding Monday morning, bio sale of intoxicating drink nor keeping open a bar during that period would be a violation of the ordinance, whereas a sale of such drink during that period at any other place than one governed by such ordinance would be a violation of the statute. This would create a palpable difference and inequality in the law governing different localities of the same State, and could never have been contemplated or intended by the legislature.
There is still another reason for saying .that neither the offences nor the penalties defined and prescribed by the ordinance and the statute are substantially the same; and that is, that a person may be convicted and punished under the statute for every act of selling intoxicating drinks on the same day as for a different offence; whereas he can be convicted and punished under the ordinance of only one offence for not closing the bar where such drinks are sold or given away on “ Sunday during the whole day.”
We have fully considered the able arguments of counsel in this case, and also the able opinion of the judge of the court below who presided at its trial, but deem it *896 unnecessary to notice them more in detail than we have already in effect done.
We are therefore of opinion that there is no error in the judgment of the court below, and that it ought to be affirmed.
Anderson and Staples, J’s, concurred in the opinion of Moncure, P.
Christian and Burks, J’s, concurred in the judgment, though uot in all the views presented in the opinion of Moncure, P. They thought that the provisions of the statute and of the ordinance of the city of Richmond were substantially the same; but the penalty was not. The keeping a bar-room open one day was one offence under the ordinance, and for which only one penalty could he inflicted ; whilst under the statute every sale is a separate offence, for which a separate penalty may be inflicted.
Judgment affirmed.